UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | No. 1:25-cr- 80 - AJ-01 |
| ) | |
| JENNIFER SCOTT RUIZ ) | |

### PLEA AGREEMENT

Pursuant to Rules 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Erin Creegan, United States Attorney for the District of New Hampshire, and the defendant, Jennifer Scott Ruiz, and the defendant's attorney, Charles Keefe, Esquire, enter into the following Plea Agreement:

1. The Plea and the Offense.

The defendant agrees to plead guilty to a Misdemeanor Information charging her with Attending an Animal Fighting Venture, in violation of 7 U.S.C. § 2156(a)(2)(A).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.

2. The Statute and Elements of the Offense.

Title 7, United States Code, Section 2156(a)(2)(A) provides, in pertinent part:

It shall be unlawful for any person to knowingly attend an animal fighting venture.

7 U.S.C. § 2156(a)(2)(A).

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, the defendant attended an event that involved a fight conducted between at least 2

- 1 -

animals for purposes of sport, wagering, or entertainment;

Second, that the event affected interstate or foreign commerce; and

Third, the defendant did so knowingly.

7 U.S.C. § 2156(a)(2)(A), 2156(f)(1).

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offense beyond a reasonable doubt:

In December 2020, the principal of Chester Academy, a public K-8 grade school in Chester, New Hampshire, informed the town's Chief of Police that a ten-year-old student made a comment to a paraprofessional educator indicating that she had traveled to North Carolina during the previous weekend with her parents to fight roosters.  The child said that the family needed two cars to transport their roosters to North Carolina and that the family made a lot of money. A different fourteen-year-old student told a teacher that he was not in school on November 30, 2020, because his family had come back from North Carolina very late on Sunday evening. Both students were the defendant's children.

Automated license plate readers in multiple states along the East Coast of the United States documented the travel of two of the defendant's vehicles from November 27 to November 30, 2020.  The plate readers showed that both vehicles traveled south along the Interstate 95 corridor on Friday, November 27, and that the vehicles traveled north beginning in the afternoon of Sunday, November 29 into the early morning hours of Monday, November 30, 2020. Additionally, on November 28, 2020, at approximately 5:45 p.m., the defendant's Facebook

account posted that she was "in North Carolina," using the "check in" feature on Facebook.

A search of the defendant's phone revealed a text message from November 27, 2020, with the defendant's husband in which she sent him the address for the Comfort Inn and Suites located in Fuquay Varina, North Carolina. The defendant's phone also contained a series of Facebook Messenger messages with third parties from November 28, 2020. In the first series of messages, the third party asked the defendant how she and her husband were doing and the defendant responded, "We r in North Carolina." The third party responded, "Oh nice. At the cock fights [laughing crying emoji]," and the defendant responded, "Yup lol." In a separate Facebook exchange with a different third party later that evening, the defendant wrote, "We almost [w]on the derby. We lost [f]irst one because he stopped [f]or a second and he got cut in the neck," "But we won 3," and "Almost [w]on the whole [d]erby." The third-party responded, "How many was it a 4 cock?" and the defendant responded, "Yes, 4 that we got from [y]ou."

A subsequent search of the defendant's house turned up numerous sparring muffs and a dummy rooster which are all used to train roosters for cockfighting. The search also found 76 roosters, 84 hens, and approximately 261 juvenile chickens of unknown sex. During an interview following the search, the defendant admitted that her husband trades roosters in North Carolina and that the two had attended cockfights on a couple of occasions.

4. <u>Penalties, Special Assessment and Restitution</u>.

The defendant understands that the penalties for the offense are:

A.   A maximum prison term of 1 year (18 U.S.C. § 49(b));

B.   A maximum fine of $100,000 (18 U.S.C. § 3571(b)(5));

C.   A term of supervised release of not more than 1 year (18 U.S.C. § 3583(b)(3)). The defendant understands that the defendant's failure to

comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release; and

D. A mandatory special assessment of $25, at or before the time of sentencing (18 U.S.C. § 3013(a)(1)(A)(iii)); and

E. In addition to the other penalties provided by law, the Court may order the defendant to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

To facilitate the payment and collection of any restitution that may be ordered, the defendant agrees that, upon request, he will provide the United States with a financial disclosure statement and supporting financial documentation.

The defendant further agrees that, if restitution is ordered, it shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full, including, but not limited to, the Treasury Offset Program.

5. Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or her sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A. Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B. Respond to questions from the Court;

    C.    Correct any inaccuracies in the pre-sentence report;

    D.    Respond to any statements made by her or her counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. <u>Sentencing Stipulations and Agreements</u>.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and agree to the following:

    (a)    The defendant agrees to waive any objection or defense that he may have that venue for the offense charged does not lie in the District of New Hampshire. The defendant stipulates that venue for the offense charged in the Misdemeanor Information lies in the District of New Hampshire; and

    (b)    The government agrees to recommend a sentence within the applicable advisory sentencing guideline range as determined by the Court.

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the Court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw her guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this

- 5 -

case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A. Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B. Challenges the United States' offer of proof at any time after the plea is entered;

C. Denies involvement in the offense;

D. Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E. Fails to give complete and accurate information about her financial status to the Probation Office;

F. Obstructs or attempts to obstruct justice, prior to sentencing;

G. Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

      H.      Fails to appear in court as required;

      I.      After signing this Plea Agreement, engages in additional criminal conduct; or

      J.      Attempts to withdraw her guilty plea.

The defendant understands and agrees that he may not withdraw her guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in her sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of her own misconduct by timely notifying the United States of her intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

    8.  <u>Waiver of Trial Rights and Consequences of Plea</u>.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent her. The defendant also understands that he has the right:

      A.      To plead not guilty or to maintain that plea if it has already been made;

      B.      To be tried by a jury and, at that trial, to the assistance of counsel;

      C.      To confront and cross-examine witnesses;

D.  Not to be compelled to provide testimony that may incriminate her; and

E.  To compulsory process for the attendance of witnesses to testify in her defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of her guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask her questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, her answers will be used against her in a prosecution for perjury or making false statements.

9. Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.  Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.  Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.  Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.  Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.  Is completely satisfied with the representation and advice received from her undersigned attorney.

10. Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to her about any civil or

administrative consequences that may result from her guilty plea. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. <u>Collateral Consequences</u>.

The defendant understands that as a consequence of her guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, her guilty plea to the charged offense could result in her being subject to immigration proceedings and removed from the United States by making her deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, her guilty plea may result in ending her naturalization, which would likely subject her to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause her removal from the United States. The defendant understands that he is bound by her guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to her guilty plea and to her sentence based on any immigration consequences and agrees not to seek to withdraw her guilty plea, or to file a direct appeal or any kind of collateral attack challenging her guilty plea, conviction, or sentence, based on any immigration consequences of her guilty plea.

12. <u>Satisfaction of Federal Criminal Liability; Breach</u>.

The defendant's guilty plea, if accepted by the Court, will satisfy her federal criminal liability in the District of New Hampshire arising from her participation in the conduct that forms the basis of the Information in this case.

The defendant understands and agrees that, if after entering this Agreement, he fails specifically to perform or fulfill completely each one of her obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing, or has otherwise violated any provision of this Agreement, the United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that he may not use her breach of this Agreement as a reason to withdraw her guilty plea or as a basis to be released from her guilty plea.

13. <u>Waivers</u>.

A. Appeal.

The defendant understands that he has the right to challenge her guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives her right to challenge on direct appeal:

    1.       Her guilty plea and any other aspect of her conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other

   adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2. The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of her rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

  B. Collateral Review

The defendant understands that he may have the right to challenge her guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives her right to collaterally challenge:

1. Her guilty plea, except as provided below, and any other aspect of her conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2. The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of her right to collateral review does not operate to waive a collateral challenge to her guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of her right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14. No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16. Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

ERIN CREEGAN
United States Attorney

Date: 9/24/25

By: _____
John J. Kennedy
Assistant United States Attorney
Bar Association #19557
53 Pleasant St., 4th Floor
Concord, NH 03301
john.kennedy2@usdoj.gov

The defendant, Jennifer Scott Ruiz, certifies that he has read this 13-page Plea Agreement and that he fully understands and accepts its terms.

Date: 9/18/25

_____
Jennifer Scott Ruiz, Defendant

I have read and explained this 13-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 9/18/25

_____
Charles Keefe, Esquire
Attorney for Jennifer Scott Ruiz

- 13 -